IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**ALEXANDER OSLEY,**                                 Case Number 3:13 CV 2819

      Petitioner,                                        Judge James G. Carr

      v.                                                 Magistrate Judge James R. Knepp, II

**ERNIE MOORE,**

      Respondent.                                        REPORT AND RECOMENDATION


### INTRODUCTION

*Pro se* Petitioner Alexander Osley, a prisoner in state custody, filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Warden Ernie Moore filed a Return of Writ (Doc. 10) with attached exhibits, and Petitioner filed a Reply (Doc. 11) and a Supplement to his Reply (Doc. 14). The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated February 10, 2014). For the reasons discussed below, the undersigned recommends the Petition be denied.

### FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings were erroneous. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. Ohio's Sixth District Court of Appeals set forth the following findings of fact:

On December 21, 2010, appellant and his cousin, Luis Osley, were indicted on one count of aggravated murder, R.C. 2903.01(B) and (F), one count of murder, R.C. 2903.02(B) and 2929.02, and one count of aggravated robbery, R.C. 2911.01(A)(1), all with firearm specifications. The charges stemmed from the December 11, 2010 shooting death of William Carswell, while he was working at the Main Street Exchange in Toledo, Lucas County, Ohio.

On October 12, 2011, the case proceeded to a jury trial. The evidence presented by the state showed that on December 11, 2010, appellant and his cousin were together at a housing complex in east Toledo. After smoking a "blunt" or marijuana cigarette they walked to Main Street Exchange where used goods were bought and sold. Working at the Exchange was the victim, William (or Lamar) Carswell. William was legally blind. Also at the store was John Welch or "Shorty" who was an employee, though not officially working at the time, and lived in an upstairs apartment.

Welch testified that although the store has a back door it is bolted and the store can only be accessed from the front. The only individual that had a key to the back was the owner and victim's brother, Kevin Carswell. Welch stated that he left the store and was approached by appellant and Luis who were entering the store. Welch stated that one man had on a Carhartt coat and the other a blue, down-filled jacket.

Welch quickly returned to the store and observed appellant and Luis discussing a swivel television set. Also in the store were the victim's fiancée, her friend, a neighborhood resident named Vito, and owner Keith Carswell.

According to Welch, Vito had brought in a battery-operated black Santa Claus to sell but it did not have batteries. William sent Welch on foot to the nearby Rite Aid to get batteries. Welch stated that when he left the store only William, his brother Keith, and the Osleys remained. Welch stated that he did not have enough money for the batteries but remembered that he had some in his apartment. Welch stated that he returned to the building through the back alley where there is access to the above apartments. Returning to the store through the front entrance, Welch did not see anyone. He testified that he called out to William but got no response. Welch then proceeded towards the back of the store and spotted William lying on the floor. He dialed 9–1–1.

Surveillance video from an adjacent building and across-the-street business was played for the jury while Welch identified the individuals entering and exiting the store. Significantly, at approximately, 4:03 to 4:05 p.m., the video depicts appellant exiting the store, looking around, reentering the store and then the two leaving and crossing the street. It appeared that Luis Osley had something under his jacket.

2

Keith Carswell testified that on the day of the shooting he went to the Exchange to pick up some blank DVDs. When he arrived, appellant and his cousin were in the store. Keith stated that appellant approached him and asked if he would be interested in purchasing a china cabinet. When Keith left after six to seven minutes, only the Osleys remained.

James Carswell, known as Kevin Carswell, is part owner of the store. Kevin testified that the Exchange cannot be entered from the back because the door is bolted from the inside. Kevin testified that he did not notice anything missing after the shooting. He further stated that William had money and jewelry on his person at the autopsy.

Toledo Police Detectives James Scott and Kermit Quinn interviewed appellant on December 15, 2010. The videotape of the interview was played for the jury. Appellant initially told the officers that an unknown individual was already in the back room of the store and he shot William. Appellant then admitted that it was his cousin that shot William but that he had no knowledge of a robbery plan. Appellant also stated that Luis would not give anything up from the robbery. Appellant stated that he stepped out of the front door, heard gunshots, and ran back in yelling "what the f* *k happened?" At that point, the two left the store and Luis' girlfriend picked them up. Appellant admitted that prior to the police interview, appellant and Luis met to make sure their stories jibed. Appellant also admitted that they threw two spent shell casings down a sewer in south Toledo. Police proceeded to the location and recovered the casings.

Following the conclusion of the testimony, the jury convicted appellant of complicity to murder and complicity to aggravated robbery. Appellant was sentenced to 15 years to life term of imprisonment for the murder conviction and ten years of imprisonment for the aggravated robbery conviction to be served concurrently.

(Doc. 10-1, Ex. 7 at 59-62).

### PROCEDURAL BACKGROUND

The relevant procedural history is undisputed by the parties and was accurately summarized in Respondent's brief, therefore it is incorporated herein with only minor changes. (Doc. 10, at 2-8).

### State Trial Court

Petitioner, along with co-defendant Luis Osley, was indicted by the September 2010 Term of the Lucas County, Ohio Grand Jury on one count of Aggravated Murder in violation of

Ohio Revised Code R.C. § 2903.01(B) and (F), with a firearm specification, one count of Murder in violation of R.C. § 2903.02(B) with a firearm specification and one count of Aggravated Robbery in violation of R.C. § 2911.01(A)(1) with a firearm specification. (Doc. 10-1, Ex. 1). Petitioner pled not guilty to the charges in the indictment. Following a jury trial, Petitioner was found guilty of complicity in the commission of murder and complicity in the commission of aggravated robbery. (Doc 10-1, Ex. 2) On October 17, 2011, Petitioner was sentenced to Life in prison with parole eligibility after serving fifteen years on the murder conviction and to 10 years for the aggravated robbery conviction; the sentences were to be served concurrently. (Doc. 10-1, Ex. 3).

### Direct Appeal

Petitioner, now represented by new attorney, filed a timely appeal to the Sixth District Court of Appeals, Lucas County, on November 10, 2011. (Doc. 10-1, Ex. 4). In his brief, he presented the following assignments of error:

1. THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION.

2. THE STATE PREJUDICED APPELLANT'S RIGHT TO A FAIR TRIAL BY ASSERTING APPELLANT HAD THE BURDEN OF PROOF.

3. PROSECUTOR COMMITTED REVERSIBLE ERROR IN FAILING TO DISCLOSE A WITNESS.

(Doc. 10-1, Ex. 5 at 18). The State filed its brief on November 28, 2012. (Doc. 10-1, Ex. 6). On June 28, 2013, the Court of Appeals issued a decision and judgment finding each assignment of error not well taken and affirming the judgment of the trial court. (Doc. 10-1, Ex. 7).

Petitioner did not file a timely appeal to the Ohio Supreme Court. Instead, on August 30, 2013, Petitioner filed a *pro se* notice of appeal and motion for delayed appeal. He stated in his motion that he had attempted to file a timely appeal by delivering his appeal documents in the

4

mail by August 6, 2013 but that the documents were not file stamped until August 14, 2013, two days late. He advised that the Clerk had returned the documents to him with information about delayed appeals. He then re-filed his notice of appeal with his motion for delayed appeal. (Doc.10-1, Exs. 8 & 9). On October 23, 2013, the Ohio Supreme Court denied Petitioner's motion for delayed appeal and dismissed the case. (Doc. 10-1, Ex. 10).

### FEDERAL HABEAS CORPUS

On December 23, 2013, pursuant to 28 U.S.C. § 2254, *pro se* Petitioner filed the instant Petition for a writ of habeas corpus raising the following grounds for relief:

> Ground One: Petitioner's mere presence at the scene where a crime was committed of which he had no knowledge or for-thought or involvement was insufficient to support his conviction. [sic]

> Ground Two: Deprived of a fair trial by State asserting Petitioner had a burden of proof. [sic]

> Ground Three: Petitioner was deprived of his right to a fair trial by the State's failure to disclose a witness.

(Doc. 1).

### JURISDICTIONAL ISSUES

Respondent argues grounds one through three of the Petition should be dismissed as procedurally defaulted. (Doc. 10, at 13).

*Procedural Default*

Procedural default occurs when a petitioner fails to fairly present his claims in a federal constitutional context to the highest state court. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*, 459 U.S. 4 (1982). Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to [the Petitioner's] failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Lundgren v. Mitchell*, 440 F.3d 754 (6th Cir.

2006). One way procedural default occurs is when the last state court rendering a decision makes its judgment on a procedural bar. *Harris v. Reed*, 489 U.S. 255, 265 (1989). That is, if, due to the petitioner's failure to comply with a procedural rule, the state court declines to reach the merits of an issue.

If the state argues a petitioner has procedurally defaulted his claims, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

1. The Court determines whether there is a procedural rule applicable to the claim at issue, and whether the petitioner in fact failed to follow it;

2. The Court then determines whether the state courts actually enforced their procedural sanction;

3. The Court then decides whether the state's procedural forfeit is an "adequate and independent ground" on which the state can rely to foreclose federal review; and

4. Finally, in order to avoid default, the petitioner can demonstrate that there was "cause" for him to neglect the procedural rule, and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Demonstrating "cause" requires a petitioner to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Demonstrating prejudice requires a petitioner to show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *U.S. v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

A procedural default will also be excused if the petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S.

6

722, 750 (1991). This is a power derived from the court's equitable discretion.  *McCleskey v. Zant*, 499 U.S. 467, 490 (1991). The Supreme Court has held that such an inquiry requires a petitioner "supplement[] a constitutional claim with a 'colorable showing of factual innocence.'" *Id.* at 495 (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)).  Maintaining this exception to the rule against reviewing procedurally defaulted claims serves as "an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty".  *Id.* (quoting *Stone v. Powell*, 428 U.S.  465, 492–93 (1976)).

Grounds One through Three

Relevant to this proceeding is Petitioner's failure to timely file an appeal for jurisdiction with the Ohio Supreme Court. (Doc. 10-1, Ex. 8). Petitioner filed a motion for delayed appeal but it was rejected by the Ohio Supreme Court. (Doc. 10-1, Ex. 10). The Court will undertake the *Maupin* analysis to determine if procedural default occurred and if so, will it be excused.

Applying the *Maupin* standard here, Ohio Supreme Court Rule of Practice 7.01A is a procedural rule that requires a jurisdictional appeal to be filed within 45 days of the last judgment entry. The Sixth District's judgment on appeal was entered on June 28, 2013; Petitioner's notice of appeal with the Ohio Supreme Court was file stamped on August 14, 2013, two days late. The Clerk of Court returned Petitioner's notice of appeal, an indication the Ohio Supreme Court was enforcing its procedural rule against Petitioner's untimely filing. Petitioner next filed a motion for delayed appeal on August 30, 2013, which was denied by the Ohio Supreme Court. (Doc.10-1, Ex. 10).  The denial of a motion for a delayed appeal is further evidence that the Ohio Supreme Court was enforcing its procedural rules against Petitioner. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004). Like as here, "[w]here a state court is entirely silent as to its reasons for denying requested relief, we assume that the state court would have enforced any applicable procedural bar." *Simpson v. Sparkman,* 94 F.3d 199, 203 (6th Cir.

1996). The Ohio Supreme Court's denial of the untimely appeal was an adequate procedural ground to foreclose federal habeas review. *See Bonilla*, 370 F.3d at 497; *Smith v. State of Ohio Dept. of Rehabilitation*, 463 F.3d 426, 431-32 (6th Cir. 2006). Thus, the Court concludes Petitioner's grounds for relief have been procedurally defaulted.

Under the final prong of the *Maupin* standard, Petitioner may excuse his procedural default if he can prove cause and prejudice or a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 750. Petitioner argues his procedural default should be excused because he submitted his jurisdictional appeal on August 6, 2013 to the prison mail department but payment was not processed, and the mail not ultimately sent, until August 8, 2013, resulting in his appeal arriving two days late. (Doc. 14, at 4).

"Where a pro se prisoner attempts to deliver his Petition for mailing in sufficient time to arrive timely in the normal course of events" cause may be shown if "[t]he prison officials' inaction…presents an objective factor external to the defense that impeded efforts to comply with the State's procedural rule." *Maples v. Stegall*, 340 F.3d 433, 439 (6th Cir. 2003). This standard requires "inaction" by the prison such that a Petitioner should not be penalized for dilatory processing however this is distinguishable from a prisoner's ignorance of normal prison processing time for mail. *See Donnal v. Sheets*, 2009 WL 3126404, at *3 (N.D. Ohio); *see also Lee v. Davis*, 2010 WL 3070060, at *3 (E.D. Mich.).

Here, there is no evidence provided by either party attesting to normal prison mail policy, processing time, or even the times which Petitioner's appeal was received or mailed out by the prison. Without any evidence of the normal course of events at the prison mail department or the specifics in this case, the Court is inclined to err on the side of caution and grant latitude to the *pro se* Petitioner's claim that cause exists. It is evident the Petitioner was prejudiced by the late filing of his appeal because the Ohio Supreme Court declined to hear the merits of his claims.

8

*See Maples*, 340 F.3d at 439. Thus, out of an abundance of caution the Court recommends these grounds be reviewed on their merits.

Ground Three

Respondent argues ground three is procedurally defaulted by other means because Petitioner failed to contemporaneously object to the testimony of Keith Carswell at the trial. (Doc. 10, at 27). The Sixth District addressed the claim as such:

> In appellant's third assignment of error he argues that he was unfairly prejudiced by the state's failure to disclosure witness Keith Carswell prior to trial. Reviewing the transcript, it appears that appellate counsel confused brothers Keith and Kevin. Trial counsel did object to Kevin, or James, Carswell's testimony arguing that he was not identified as a potential witness. Reviewing the record, Kevin was listed as a witness on the "State's Witness List" filed on March 29, 2011.
>
> Keith Carswell also testified. Based solely on the March 29 filing, it appears that he was not disclosed as a witness prior to trial. However, defense counsel did not object to his testimony. Thus, we review the failure to disclose a witness under a plain error standard. *State v. Caudill,* 6th Dist. No. WD–07–009,2007–Ohio–1557, ¶ 46.
>
> During counsel's cross-examination, Keith was questioned about his December 11, 2010 interview with Detective Kermit Quinn. Based on counsel's line-of-questioning it is apparent that counsel received and reviewed the taped police interview; he was attempting to reveal inconsistencies between Keith's interview and his direct testimony. Accordingly, appellant was not prejudiced by any failure to disclose. Appellant's third assignment of error is not well-taken.

(Doc. 10-1, Ex. 7 at 65-66).

The Sixth District applied the contemporaneous objection rule to dispose of this assignment of error because Petitioner failed to object at the time of trial and thus, waived appellate review of the issue. Ohio Crim.R. 30(a), *see Scott v. Mitchell*, 209 F.3d 854, 865 (6th Cir. 2000). Petitioner claims he did object, however he provides no record citation to support this

9

claim. (Doc. 1, at 9). A review of the record shows that Petitioner's counsel made no objection to the testimony of Keith Carswell.[1] (Doc. 10-3, at 454-472).

The court of appeals enforced the contemporaneous objection rule by proceeding into a plain error review of the issue. Importantly, "[a] state court's review of an issue for plain error is considered by the Sixth Circuit as the enforcement of a procedural default." *Jalowiec v. Bradshaw*, 2008 WL 312655, at *23 (N.D. Ohio), *aff'd*, 657 F.3d 293 (6th Cir. 2011) (citing *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004)). Thus, the appellate court clearly relied upon procedural bars in denying Petitioner's assignment of error. "The Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice". *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Jalowiec*, 2008 WL 312655, at *23 (citing *Williams*, 380 F.3d at 968). Accordingly, the first three prongs of the *Maupin* standard have been met. Lastly, Petitioner has not made a showing of cause and prejudice or a miscarriage of justice, thus, the Court recommends ground three of the claim be procedurally defaulted.

### STANDARD OF REVIEW

When the basis for a federal habeas claim has been previously adjudicated by the state courts, AEDPA provides the writ shall not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." § 2254(d)(1). A federal court may grant habeas relief if the state court arrives at a decision opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme

---

1. A review of the record supports the Sixth District's findings that appellate counsel confused Kevin a.k.a. James and Keith Carswell. Kevin's testimony was objected to by Petitioner's counsel; however the issue was ultimately resolved, with the objection being withdrawn, and Kevin continued to testify. (Doc. 10-2, 315-318, 311-341); (Doc. 10-1, Ex. 6 at 58).

Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409–11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).

### Ground One

In ground one, Petitioner claims his convictions were based on insufficient evidence. (Doc. 1, at 4-7). This claim is addressed on the merits.

To defeat a claim of insufficient evidence, the court must find that "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Consistent with the deference given to the trier of fact's resolution of conflicts in evidence, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume−even if it does not affirmatively appear in the record−that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson,* 443 U.S. at 326; *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983).

11

As such, the reviewing court is not permitted to reweigh evidence or in any way substitute its own opinion for that of the trier of fact. *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)). Due process is satisfied as long as such evidence is enough for a rational trier of fact to make a permissible inference of guilt, as opposed to a reasonable speculation that the petitioner is guilty of the charged crime. *Newman v. Metrish*, 543 F.3d 793, 796-97 (6th Cir. 2008). "[T]he *Jackson v. Virginia* standard is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Further it is important to note the double deference applicable in this case; first, the deference accorded to the trier of fact's verdict by *Jackson*, and second, the deference to the state court's consideration of the verdict under AEDPA. *See Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).

Here, the Sixth District Court of Appeals overruled Petitioner's insufficiency claim as follows:

> Appellant's first assignment of error asserts that appellant's convictions for complicity to murder and complicity to aggravated robbery were supported by insufficient evidence. Sufficiency of the evidence is a "test of adequacy" and a question of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.
>
> Murder, R.C. 2903.02(A), provides in relevant part that "[n]o person shall purposely cause the death of another." Ohio's complicity statute, R.C. 2923.03, provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." R.C. 2923.03(A)(2). To prove complicity, R.C. 2923.03(A)(2), the evidence must show that the defendant "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the

12

defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus. Intent may be inferred from the circumstances surrounding the crime. Id. "'[P]articipation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.' " *Id.* at 245, quoting *State v. Pruett*, 28 Ohio App.2d 29, 34, 273 N.E.2d 884 (4th Dist.1971).

In the present case, during the commission of the offenses, appellant walked out of the store, looked around, returned to the store and then left with Luis. After the offenses, appellant helped dispose of the shell casings and met with Luis in order to fabricate a story for the police. When interviewed by police, appellant initially lied and attempted to blame an unknown third individual. Taking these facts together, we find that sufficient evidence supported appellant's convictions. Appellant's first assignment of error is not well-taken.

(Doc. 10-1, Ex.7 at 62-63).

Upon review, the Court finds the Sixth District applied the appropriate legal standard to a review of Petitioner's claim and determined that a reasonable juror could have made adequate inferences of guilt from the evidence presented. Petitioner's actions both during and after the crime reasonably indicate to this Court that he was complicit in the murder of William Lamar Carswell. It is also clear that the jury chose to accept the State's version of the events and chose to disbelieve the testimony of Petitioner, a choice this Court will not disturb. Petitioner asks this Court to do little more than reweigh the evidence presented to the jury, a task it will not undertake.

Thus, giving full credit to the jury's evidentiary determinations and the appeals court's reasonable application of the law in this case, the Court finds Petitioner failed to overcome his burden in proving the insufficiency of the evidence or that the lower courts were objectively unreasonable in their application of the law. As such, ground one should be found to be without merit and dismissed.

*Ground Two*

In ground two, Petitioner claims improper comments by the prosecutor in his opening statement erroneously shifted the burden of proof to Petitioner during the trial. (Doc. 1, at 7-8). This claim is addressed on the merits.

To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). "Even if the prosecutor's conduct was 'undesirable or even universally condemned,' this Court can only provide relief if the [conduct was] so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process violation." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). In evaluating fairness, it is not the prosecutor's culpability but the fairness of the whole trial taken "within the context of the entire record." *See Smith v. Phillips*, 455 U.S. 209, 219 (1982); *Lundy v. Campbell*, 888 F.2d 467, 472-73 (6th Cir. 1989).  Lastly, in a federal habeas corpus proceeding challenging a state conviction, the Court may not grant relief unless that error "had a substantial and injurious effect or influence in determining the jury's verdict." *See Calderon v. Coleman*, 525 U.S. 141, 145 (1998) (per curiam) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

The Sixth District addressed this claims as follows:

> In his second assignment of error, appellant argues that the trial court erroneously overruled defense counsel's objection to comments made by the prosecutor during his opening statement. The comments provided:
>
> > And you'll hear Alexander Osley tell Detective Quinn and Detective Scott that at that point when Lamar turned his back and started to walk toward the back of the store he saw his cousin pull what appeared to be a silver colored handgun from behind him, hold it up and Lamar Carswell was not looking toward them, and watched Luis Osley follow Lamar Carswell to the back of the store. The evidence is going to establish that Alexander Osley made no attempt to stop Luis—

14

Mr. Wingate: Your Honor, I'm going to object.
* * * [a bench conference was held]

THE COURT: What is the basis?

Mr. Wingate: Your Honor, that is inappropriate. He's now putting a duty on the defendant to act in a manner to stop this from happening as opposed to complicity that he aided and abetted.

THE COURT: Well, the point is this, it's in furtherance of the complicity.

Mr. Wingate: That he didn't stop him?

THE COURT: No, he said he did nothing. And in other words, if he is saying he didn't know what was going on, when he hears shots, it's not that he's guilty of any offense, but it is as relates to his conduct, not his guilt. * * *.

The objection was then overruled. The jury was reminded that opening statements are not to be considered as evidence. Further, while instructing the jury on aiding and abetting, the court explained that "[t]he mere presence of an accused at the scene of a crime is not sufficient to prove in and of itself that the accused was with the aider and/or abettor."

Appellant argues that the above comments improperly placed, absent an affirmative defense, a burden of proof upon him at trial. Upon review, we find that any potential error in the prosecutor's statement was cured by the court's instructions to the jury. It is presumed that a jury will follow the instructions of the court. *See State v. Henderson,* 39 Ohio St.3d 24, 33, 528 N.E.2d 1237 (1988). Appellant's second assignment of error is not well-taken.

(Doc. 10-1, Ex. 7 at 63-65).

In reviewing the alleged offending comment and the Sixth District's opinion, this Court can find no error in the conclusion that whatever potential effect this comment may have had, it was appropriately addressed by the judge's curative instruction and the jury instructions. This comment appears isolated to the opening statement after which the judge gave a curative instruction to the jury reminding them that opening statements have no evidentiary value. *See Simpson v. Warren*, 475 F. App'x 51, 59 (6th Cir. 2012); *Webb v. Mitchell*, 586 F.3d 383, 396

(6th Cir. 2009). At the conclusion of the trial, the judge appropriately instructed the jury on the law regarding complicity such that any residual effect the prosecutor's comment may have had was removed. There is no evidence that the jury ignored the judge's instructions or that the prosecutor's comment "had a substantial and injurious effect or influence in determining the jury's verdict." *See Calderon v. Coleman*, 525 U.S. 141, 145 (1998) (per curiam) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Thus, the Court finds the prosecutor's comment did not jeopardize the fairness of the trial and recommends ground two be dismissed on the merits.

### CONCLUSION

Following review, and for the reasons stated above, the Court recommends the Petition be dismissed.

s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).