IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Alexander Osley,                           Case No. 3:13CV2819

        Petitioner,

        v.                                        **ORDER**

Ernie Moore,

        Respondent.

*Pro se* petitioner Alexander Osley filed this habeas corpus action under 28 U.S.C.§ 2254. (Doc. 1). Osley, a prisoner in state custody, names Warden Ernie Moore as respondent. I have jurisdiction over the petition under § 2254(a).

Osley, along with co-defendant Luis Osley, was indicted on one count of aggravated murder, with a firearm specification, one count of murder, with a firearm specification, and one count of aggravated robbery, with a firearm specification. (Doc. 10-1, Ex. 1). Osley pleaded not guilty to the charges in the indictment.

Following trial, a jury found Osley guilty of complicity in the commission of murder and complicity in the commission of aggravated robbery. (Doc 10-1, Ex. 2). The court sentenced Osley to life in prison with parole eligibility after serving fifteen years on the murder conviction, and to ten years for the aggravated robbery conviction, the sentences to be served concurrently. (Doc. 10-1, Ex. 3).

Osley asserts three grounds for relief: 1) the evidence was insufficient to support a conviction; 2) the State prejudiced his right to a fair trial by asserting he had the burden of proof;

1

and 3) the prosecutor committed reversible error by failing to disclose a witness. (Doc. 10-1, Ex. 5 at 18).

The Magistrate Judge to whom I referred the petition has filed a Report and Recommendation (R&R) recommending that I deny the petition. Following a *de novo* review of the R&R, I find the Magistrate Judge correctly concluded that the petition lacks merit.

## Background

For purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings were erroneous. 28 U.S.C. § 2254(e)(1); *see, e.g.*, *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530.

Ohio's Sixth District Court of Appeals set forth the following findings of fact in *State v. Osley*, 2013 WL 3356901, *1-2 (Ohio Ct. App.):

> Defendant-appellant, Alexander Osley, appeals the October 18, 2011 judgment of the Lucas County Court of Common Pleas which, following a jury trial and conviction for complicity in the commission of murder and complicity in the commission of aggravated robbery, sentenced appellant to a total term of life imprisonment with parole eligibility after 15 years. For the reasons that follow, we affirm.
>
> On December 21, 2010, appellant and his cousin, Luis Osley, were indicted on one count of aggravated murder, R.C. 2903.01(B) and (F), one count of murder, R.C. 2903.02(B) and 2929.02, and one count of aggravated robbery, R.C. 2911.01(A)(1), all with firearm specifications. The charges stemmed from the December 11, 2010 shooting death of William Carswell, while he was working at the Main Street Exchange in Toledo, Lucas County, Ohio.
>
> On October 12, 2011, the case proceeded to a jury trial. The evidence presented by the state showed that on December 11, 2010, appellant and his cousin were together at a housing complex

2

in east Toledo. After smoking a "blunt" or marijuana cigarette they walked to Main Street Exchange where used goods were bought and sold. Working at the Exchange was the victim, William (or Lamar) Carswell. William was legally blind. Also at the store was John Welch or "Shorty" who was an employee, though not officially working at the time, and lived in an upstairs apartment.

Welch testified that although the store has a back door it is bolted and the store can only be accessed from the front. The only individual that had a key to the back was the owner and victim's brother, Kevin Carswell. Welch stated that he left the store and was approached by appellant and Luis who were entering the store. Welch stated that one man had on a Carhartt coat and the other a blue, down-filled jacket.

Welch quickly returned to the store and observed appellant and Luis discussing a swivel television set. Also in the store were the victim's fiancée, her friend, a neighborhood resident named Vito, and owner Keith Carswell.

According to Welch, Vito had brought in a battery-operated black Santa Claus to sell but it did not have batteries. William sent Welch on foot to the nearby Rite Aid to get batteries. Welch stated that when he left the store only William, his brother Keith, and the Osleys remained. Welch stated that he did not have enough money for the batteries but remembered that he had some in his apartment. Welch stated that he returned to the building through the back alley where there is access to the above apartments. Returning to the store through the front entrance, Welch did not see anyone. He testified that he called out to William but got no response. Welch then proceeded towards the back of the store and spotted William lying on the floor. He dialed 9-1-1.

Surveillance video from an adjacent building and across-the-street business was played for the jury while Welch identified the individuals entering and exiting the store. Significantly, at approximately, 4:03 to 4:05 p.m., the video depicts appellant exiting the store, looking around, reentering the store and then the two leaving and crossing the street. It appeared that Luis Osley had something under his jacket.

Keith Carswell testified that on the day of the shooting he went to the Exchange to pick up some blank DVDs. When he arrived, appellant and his cousin were in the store. Keith stated that appellant approached him and asked if he would be interested in purchasing a china cabinet. When Keith left after six to seven minutes, only the Osleys remained.

3

> James Carswell, known as Kevin Carswell, is part owner of the store. Kevin testified that the Exchange cannot be entered from the back because the door is bolted from the inside. Kevin testified that he did not notice anything missing after the shooting. He further stated that William had money and jewelry on his person at the autopsy.
>
> Toledo Police Detectives James Scott and Kermit Quinn interviewed appellant on December 15, 2010. The videotape of the interview was played for the jury. Appellant initially told the officers that an unknown individual was already in the back room of the store and he shot William. Appellant then admitted that it was his cousin that shot William but that he had no knowledge of a robbery plan. Appellant also stated that Luis would not give anything up from the robbery. Appellant stated that he stepped out of the front door, heard gunshots, and ran back in yelling "what the f**k happened?" At that point, the two left the store and Luis' girlfriend picked them up. Appellant admitted that prior to the police interview, appellant and Luis met to make sure their stories jibed. Appellant also admitted that they threw two spent shell casings down a sewer in south Toledo. Police proceeded to the location and recovered the casings.
>
> Following the conclusion of the testimony, the jury convicted appellant of complicity to murder and complicity to aggravated robbery. Appellant was sentenced to a 15 years to life term of imprisonment for the murder conviction and ten years of imprisonment for the aggravated robbery conviction to be served concurrently. This [timely] appeal followed.

On appeal, Osley asserted the same three grounds for relief he asserts here. *Id.* at *2. On June 28, 2013 the appeallate court issued a decision and judgment finding each ground for relief meritless. *See generally id.*

Osley did not file a timely appeal to the Ohio Supreme Court. Instead, on August 30, 2013, Osley filed a *pro se* notice of appeal and motion for delayed appeal. He stated in his motion that he had attempted to file a timely appeal by delivering his appeal documents by mail on August 6, 2013, but that the documents were not file stamped until August 14, 2013, two days after the filing deadline. He advised that the Clerk of Court had returned the documents to him with information about delayed appeals.

4

He then re-filed his notice of appeal with his motion for delayed appeal. (Doc.10-1, Exs. 8 & 9). On October 23, 2013, the Ohio Supreme Court denied Osley's motion for delayed appeal and dismissed the case. (Doc. 10-1, Ex. 10).

## Discussion

As noted above, Osley's asserted grounds for relief are: 1) the evidence was insufficient to support a conviction; 2) the State prejudiced his right to a fair trial by asserting he had the burden of proof; and 3) the prosecutor committed reversible error by failing to disclose a witness. (Doc. 1).

Respondent counters that I should dismiss each of these grounds as procedurally defaulted because Osley failed timely to file his jurisdictional appeal with the Ohio Supreme Court. (Doc. 10 at 13).

As discussed below, I agree with the Magistrate Judge that whether I should dismiss grounds one and two as procedurally defaulted is a close call. Like the Magistrate Judge, I am inclined to err on the side of caution and grant this *pro se* petitioner some latitude regarding his failure timely to file his appeal. I will therefore consider those grounds on their merits.

That said, I also agree with the Magistrate Judge that I should dismiss ground three as procedurally defaulted for reasons unrelated to Osley's failure timely to file. I therefore will not consider that ground on its merits.

I address the procedural issues first and Osley's remaining merits arguments second.

### A. Procedural Default

Procedural default occurs when a petitioner fails fairly to present his claims in a federal constitutional context to the highest state court. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*, 459 U.S. 4 (1982). Reasons of federalism and comity generally bar federal

habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to [the Petitioner's] failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Lundgren v. Mitchell*, 440 F.3d 754 (6th Cir. 2006).

One way procedural default occurs is when the last state court rendering a decision bases its judgment on a procedural bar. *Harris v. Reed*, 489 U.S. 255, 265 (1989). That is, if, due to the petitioner's failure to comply with a procedural rule, the state court declines to reach the merits of an issue.

To determine whether Osley has indeed defaulted and, if so, whether I should excuse the default, I conduct the four-step analysis set forth in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986):

> 1) I determine whether there is a procedural rule applicable to the claim at issue, and whether Osley in fact failed to follow it;
>
> 2) I then determine whether the state courts actually enforced their procedural sanction;
>
> 3) I then decide whether the state's procedural forfeit is an "adequate and independent ground" on which the state can rely to foreclose federal review; and
>
> 4) Finally, in order to avoid default, Osley can demonstrate that there was "cause" for him to neglect the procedural rule, and that he was actually prejudiced by the alleged constitutional error.

Demonstrating "cause" requires Osley to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Demonstrating prejudice requires Osley to show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage,

infecting his entire trial with error of constitutional dimensions." *U.S. v. Frady*, 456 U.S. 152, 170 (1982).

I would also excuse a procedural default if Osley demonstrated that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). This is a power derived from my equitable discretion. *See McCleskey v. Zant*, 499 U.S. 467, 490 (1991). The Supreme Court has held that such an inquiry requires that a petitioner "supplement[] a constitutional claim with a 'colorable showing of factual innocence.'"[1] *Id.* at 495 (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)).

Applying the *Maupin* standard here, I find Ohio Supreme Court Rule of Practice 7.01A is a procedural rule that requires the filing of a jurisdictional appeal within forty-five days of the last judgment entry. The Sixth District entered judgment on appeal on June 28, 2013; Osley's notice of appeal with the Ohio Supreme Court was file stamped on August 14, 2013, two days late. The Clerk of Court returned Osley's notice of appeal, an indication the Ohio Supreme Court was enforcing its procedural rule against Osley's untimely filing.

Osley next filed a motion for delayed appeal on August 30, 2013, which the Ohio Supreme Court denied. (Doc.10-1, Ex. 10). The denial of a motion for a delayed appeal is further indication that the Ohio Supreme Court was enforcing its procedural rules against Osley. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004). "Where a state court is entirely silent as to its reasons for denying requested relief, [I] assume that the state court would have enforced any applicable procedural bar." *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996).

---

[1] Maintaining this exception to the rule against reviewing procedurally defaulted claims serves as "an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty". *McCleskey*, 499 U.S. at 490 (quoting *Stone v. Powell*, 428 U.S. 465, 492–93 (1976)).

7

The Ohio Supreme Court's denial of the untimely appeal was an adequate procedural ground to foreclose federal habeas review. *See Bonilla*, 370 F.3d at 497; *Smith v. State of Ohio Dept. of Rehabilitation*, 463 F.3d 426, 431-32 (6th Cir. 2006). Thus, I find Osley's grounds for relief are procedurally defaulted.

Under the final prong of the *Maupin* standard, I may excuse Osley's procedural default if he can prove cause and prejudice or a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. He argues I should do so because he submitted his jurisdictional appeal on August 6, 2013 to the prison mail department but payment was not processed, and the mail not ultimately sent, until August 8, 2013, which caused his appeal to arrive two days late. (Doc. 14 at 4).

"Where a *pro se* prisoner attempts to deliver his Petition for mailing in sufficient time to arrive timely in the normal course of events," he or she may show cause if "[t]he prison officials' inaction . . . presents an objective factor external to the defense that impeded efforts to comply with the State's procedural rule." *Maples v. Stegall*, 340 F.3d 433, 439 (6th Cir. 2003). This standard requires "inaction" by the prison – i.e., dilatory processing of mail. *Id.* A prisoner's ignorance of normal prison processing time for mail is not adequate cause. *See Donnal v. Sheets*, 2009 WL 3126404, *3 (N.D. Ohio); *see also Lee v. Davis*, 2010 WL 3070060, *3 (E.D. Mich.).

Here, neither party offered evidence of the normal prison mail policy, processing time, or even when the prison received or mailed Osley's appeal. Without such evidence, I am inclined to agree with the Magistrate Judge that I should accept Osley's claim that cause exists rather than risk depriving him of constitutional rights. Clearly, the late filing of Osley's appeal prejudiced him. *See Maples*, 340 F.3d at 439. Thus, out of an abundance of caution, I will review grounds one and two on their merits rather than dismiss them as procedurally flawed.

8

Ground three, on the other hand, is procedurally defaulted on another ground for which there is no excuse. Osley failed contemporaneously to object at the trial to the testimony of Keith Carswell, the witness Osley claims the prosecutor did not disclose.[2] Ohio Crim. R. 30(a); *see Scott v. Mitchell*, 209 F.3d 854, 865 (6th Cir. 2000). As the Sixth District explained in *Osley*, 2013 WL 3356901, at *4:

> In appellant's third assignment of error he argues that he was unfairly prejudiced by the state's failure to disclosure witness Keith Carswell prior to trial. Reviewing the transcript, it appears that appellate counsel confused brothers Keith and Kevin. Trial counsel did object to Kevin, or James, Carswell's testimony arguing that he was not identified as a potential witness. Reviewing the record, Kevin was listed as a witness on the "State's Witness List" filed on March 29, 2011.
>
> Keith Carswell also testified. Based solely on the March 29 filing, it appears that he was not disclosed as a witness prior to trial. However, defense counsel did not object to his testimony. Thus, we review the failure to disclose a witness under a plain error standard.
>
> During counsel's cross-examination, Keith was questioned about his December 11, 2010 interview with Detective Kermit Quinn. Based on counsel's line-of-questioning it is apparent that counsel received and reviewed the taped police interview; he was attempting to reveal inconsistencies between Keith's interview and his direct testimony. Accordingly, appellant was not prejudiced by any failure to disclose. Appellant's third assignment of error is not well-taken.

(Citation omitted).

The court of appeals thus undertook a "plain error" review of the contemporaneous objection issue. *See Jalowiec v.Bradshaw*, 2008 WL 312655, *23 (N.D. Ohio) ("A state court's review of an issue for plain error is considered by the Sixth Circuit as the enforcement of a procedural default."). "The Sixth Circuit has held that Ohio's contemporaneous objection rule

---

[2] Osley claims he did object at trial, but he provides no record citation to prove it. (Doc. 1 at 9).

9

constitutes an adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice." *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Jalowiec*, 2008 WL 312655, at *23 (citing *Williams*, 380 F.3d at 968). Osley has not made a showing of cause and prejudice or a miscarriage of justice. I therefore dismiss ground three as procedurally defaulted.

I next discuss the merits of grounds one and two.

### B. Merits

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 1101 Stat. 1214 (AEDPA), applies to petitions filed after the AEDPA's effective date. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir.2007). The controlling AEDPA provision (codified at 18 U.S.C. § 2254(d)) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim –
>
>> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence in the State court proceeding.

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir.2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13.

"A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams*, 529 U.S. at 413).

"The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The state court's application of clearly established law must be objectively unreasonable." *Id.*

To obtain federal habeas corpus relief, petitioner must establish the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S.Ct. 26, 27 (2011) (citing *Harrington v. Richter*, 562 U.S. 86 (2011)). This standard is "difficult to meet" because "habeas corpus 'is a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 131 S.Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The petitioner carries the burden of proof. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### 1. Insufficient Evidence

Osley argues the evidence against him was insufficient to support a conviction. He asserts that he was merely present at the crime scene, and had no prior knowledge or involvement with

the crime. (Doc. 1 at 4-7). Thus, he contends, no rational trier of fact could have found him guilty. I disagree.

On this issue, I must determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*

Consistent with the deference given to the trier of fact's resolution of conflicts in evidence, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326; *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983).

I am not permitted to reweigh evidence or in any way substitute my opinion for that of the trier of fact. *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)). Due process requirements are satisfied as long as such evidence is enough for a rational trier of fact to make a permissible inference of guilt, as opposed to a reasonable speculation that the petitioner is guilty of the charged crime. *Newman v. Metrish*, 543 F.3d 793, 796-97 (6th Cir. 2008). "[T]he *Jackson v. Virginia* standard is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Not only must I defer to the trier of fact's verdict under *Jackson*, but also to the state court's consideration of the verdict under AEDPA. *See Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).

Here, the Sixth District overruled Osley's insufficiency claim in *Osley*, 2013 WL 3356901, at *2-3:

> Appellant's first assignment of error asserts that appellant's convictions for complicity to murder and complicity to aggravated robbery were supported by insufficient evidence. Sufficiency of the evidence is a "test of adequacy" and a question of law. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
>
> Murder, R.C. 2903.02(A), provides in relevant part that "[n]o person shall purposely cause the death of another." Ohio's complicity statute, R.C. 2923.03, provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall . . . [a]id or abet another in committing the offense." To prove complicity [under] R.C. 2923.03(A)(2), the evidence must show that the defendant "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." Intent may be inferred from the circumstances surrounding the crime. Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.
>
> In the present case, during the commission of the offenses, appellant walked out of the store, looked around, returned to the store and then left with Luis. After the offenses, appellant helped dispose of the shell casings and met with Luis in order to fabricate a story for the police. When interviewed by police, appellant initially lied and attempted to blame an unknown third individual. Taking these facts together, we find that sufficient evidence supported appellant's convictions. Appellant's first assignment of error is not well-taken.

(Citations and quotation marks omitted).

I find the Sixth District applied the appropriate legal standard and determined that a reasonable juror could have made adequate inferences of guilt from the evidence presented. Osley's actions both during and after the crime reasonably indicate that he was complicit in the murder of William Lamar Carswell.[3] It is also clear that the jury chose to accept the State's version of the events and chose to disbelieve Osley's testimony, a choice I will not disturb. Osley asks me to do little more than reweigh the evidence presented to the jury, a task I will not undertake.

## 2. Burden of Proof

Osley also argues certain of the prosecutor's comments during opening statements improperly shifted the burden of proof to Osley during the trial. I disagree.

To prevail on his claim of prosecutorial misconduct, Osley must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). "Even if the prosecutor's conduct was 'undesirable or even universally condemned,' [I] can only provide relief if the [conduct was] so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process violation." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

In evaluating fairness, it is not the prosecutor's culpability but the fairness of the whole trial taken "within the context of the entire record." *See Smith v. Phillips*, 455 U.S. 209, 219 (1982); *Lundy v. Campbell*, 888 F.2d 467, 472-73 (6th Cir. 1989). Lastly, in a federal habeas corpus proceeding challenging a state conviction, I may not grant relief unless that error "had a

---

[3] Osley cites *Davis*, 658 F.3d at 544 (applying Michigan law) to argue "[a] person cannot be convicted as an aider and abettor on the basis that he was an accessory after the fact. Aiding and abetting of the crime must occur before or during the commission of the crime" (internal citations omitted). Osley's argument misses the mark. The jury clearly based its verdict on Osley's actions both during *and* after the offense (and the Sixth District agreed). I will not disturb the jury's determination. *See Fisher*, 648 F.3d at 450.

substantial and injurious effect or influence in determining the jury's verdict." *See Calderon v. Coleman*, 525 U.S. 141, 145 (1998) (per curiam) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

The Sixth District addressed the allegations of prosecutorial misconduct in *Osley*, 2013 WL 3356901, at *3-4:

> In his second assignment of error, appellant argues that the trial court erroneously overruled defense counsel's objection to comments made by the prosecutor during his opening statement. The comments provided:
>
>> And you'll hear Alexander Osley tell Detective Quinn and Detective Scott that at that point when Lamar turned his back and started to walk toward the back of the store he saw his cousin pull what appeared to be a silver colored handgun from behind him, hold it up and Lamar Carswell was not looking toward them, and watched Luis Osley follow Lamar Carswell to the back of the store. The evidence is going to establish that Alexander Osley made no attempt to stop Luis –
>>
>> Mr. Wingate: Your Honor, I'm going to object.
>>
>> [a bench conference was held]
>>
>> THE COURT: What is the basis?
>>
>> Mr. Wingate: Your Honor, that is inappropriate. He's now putting a duty on the defendant to act in a manner to stop this from happening as opposed to complicity that he aided and abetted.
>>
>> THE COURT: Well, the point is this, it's in furtherance of the complicity.
>>
>> Mr. Wingate: That he didn't stop him?
>>
>> THE COURT: No, he said he did nothing. And in other words, if he is saying he didn't know what was going on, when he hears shots, it's not that he's guilty of any offense, but it is as relates to his conduct, not his guilt. * * *.

15

> The objection was then overruled. The jury was reminded that opening statements are not to be considered as evidence. Further, while instructing the jury on aiding and abetting, the court explained that "[t]he mere presence of an accused at the scene of a crime is not sufficient to prove in and of itself that the accused was with the aider and/or abettor."
>
> Appellant argues that the above comments improperly placed, absent an affirmative defense, a burden of proof upon him at trial. Upon review, we find that any potential error in the prosecutor's statement was cured by the court's instructions to the jury. It is presumed that a jury will follow the instructions of the court. Appellant's second assignment of error is not well-taken.

(Citation omitted).

I find no error in the Sixth District's conclusion that whatever deleterious effects the prosecutor's comments may have had, the judge appropriately addressed them by: 1) instructing the jury that opening statements have no evidentiary value, *see Simpson v. Warren*, 475 F. App'x 51, 59 (6th Cir. 2012) and *Webb v. Mitchell*, 586 F.3d 383, 396 (6th Cir. 2009); and 2) instructing the jury on the law regarding complicity so as to remove any residual effect the prosecutor's comments may have had.

There is no evidence that the jury ignored the judge's instructions or that the prosecutor's comments "had a substantial and injurious effect or influence in determining the jury's verdict." *See Calderon*, 525 U.S. at 145 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). Osley's second ground for relief is therefore without merit.

## Conclusion

For the foregoing reasons, it is hereby

ORDERED THAT:

1. Osley's objections to the Magistrate Judge's Report and Recommendation (Doc. 20) be, and the same hereby are, overruled;

2. The Magistrate Judge's Report and Recommendation (Doc. 17) be, and the same hereby is, adopted; and

3. The petition be, and the same hereby is, dismissed with prejudice.

I decline to grant a certificate of appealability. In any event, petitioner could not take an appeal from this decision in good faith, and appeal should not be allowed without prepayment of the requisite filing fee.

So Ordered.

/s/ James G. Carr
Sr. U.S. District Judge